STATE of Missouri, Respondent,

v.

Percy E. COOKSEY, III, Appellant.

No. 55840.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 27, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 28, 1990.

Application to Transfer Denied
May 15, 1990.

James A. Stemmler, Clayton, for appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for respondent.

CARL R. GAERTNER, Judge.

Appellant appeals from a jury conviction for unlawful use of a weapon, kidnapping, forcible rape, first degree robbery, and three counts of armed criminal action. The trial court sentenced appellant as a persistent offender to a total of life imprisonment plus sixty years. We affirm.

Since appellant makes no challenge to the sufficiency of the evidence, we need only briefly set forth those facts supportive of the verdict. On February 6, 1987, at approximately 10:00 p.m., appellant entered the Greater Faith Baptist Church. Earlier that evening, appellant reportedly consumed various alcoholic beverages and illegal substances, and presumably, was still suffering from their effects. Once in the church, an associate minister greeted appellant and welcomed him to the evening's prayer service. Appellant sat inconspicuously through thirty to forty minutes of the service before approaching the altar, with others in the congregation, to join hands and form a "prayer circle." While in the "prayer circle," appellant withdrew an eighteen inch knife and held it to the throat of the woman next to him. Appellant instructed the congregation to do as he said, or he would kill the woman.

After ordering the congregation to form a line against the wall, appellant exclaimed: "You preached your sermon, now I'm going to preach mine." Appellant claimed that God had put a curse on him a long time ago, but now, he no longer believed in such a God. Appellant then revealed to the captive congregation that he was "Shaka Zulu"—an African deity. After asking the congregation whether they believed in God, appellant stated: "I want to see how much you believe in Him." While still holding a knife on the woman next to him, appellant singled out the church's minister and told him to disrobe.

Appellant left the main sanctuary momentarily for the church's lobby where he turned off several lights and locked one of the exits. Upon returning, appellant ordered the minister to continue disrobing and then to approach appellant. The minister finished disrobing and started for appel-

lant. Yet, the "Spirit" told the minister, as he later disclosed through his testimony, to "[w]alk out the door." Abidingly, the minister altered his course and escaped through a side exit, disregarding appellant's protests.

Appellant, threatening to kill the woman if anyone pursued him, left the church still holding a knife to the woman's throat. The pair travelled several blocks to a vacant building. During the walk, appellant had the presence of mind to tell the woman to "be quiet" when a passerby approached and to "stoop down" behind a parked car until traffic subsided. When the woman attempted to flee, appellant easily caught her. Appellant took the woman to the second floor of the abandoned house where he blindfolded her and raped her. Appellant then took the woman's watch and told her to count to "360" before beginning to look for her clothes.

■ Appellant's first point on appeal challenges the constitutionality of the process of selection of grand jurors in the City of St. Louis. Appellant believes the grand jury that issued his indictment was not drawn from a fair cross-section of the community because of systematic exclusion based on race, gender, age, occupation, and income. The trial court, however, denied appellant's "Motion For Disclosure [Of] Grand Jury Data." Appellant, claiming an abuse of discretion, contends that the trial court's denial of his motion for disclosure precludes him from pursuing his constitutional claim.

In *State v. Johnson*, 504 S.W.2d 23 (Mo. 1974), the defendant filed a motion to dismiss his grand jury indictment citing the disproportionate number of blacks, poor people, and unskilled laborers on the grand jury to the number of such persons in the St. Louis population. There, the Missouri Supreme Court rejected defendant's claim, reasoning:

> [T]he State filed and the case actually went to trial on an information which had been substituted for the indictment more than two months before trial. Assuming, without deciding, that the court

erred in overruling the motion to dismiss the indictment for the reasons stated, this would not contaminate or render ineffective the information under which defendant went to trial without objection. *Johnson*, 504 S.W.2d at 26. Additionally, the court noted the information did not charge any additional or different offense and no rights of defendant were prejudiced. *Johnson*, 504 S.W.2d at 27.

Appellant's grand jury claim in the present case fails for the same reasons. In March, 1987, a grand jury in the City of St. Louis issued an indictment charging appellant with unlawful use of a weapon § 571.030.1(4), kidnapping § 565.110, forcible rape § 566.030, first degree robbery § 569.020, and three counts of armed criminal action under § 571.015.[1] On July 19, 1988, the State filed a motion to "Substitute Information In Lieu Of Indictment." This Substitute Information incorporated "by reference all counts, charges, endorsements, allegations and writings contained" in the grand jury's indictment and informed the court of appellant's status as a prior and persistent offender under § 558.016 and § 557.036.4. Appellant challenged this substitution on August 1, 1988, by filing a "Motion to Dismiss and Strike Information." The trial court denied appellant's motion and the cause proceeded to trial on the Substitute Information without further objection. The substitution did not charge any additional offenses nor did it prejudice any of appellant's rights. Accordingly, any possible error in the composition of appellant's grand jury did not render ineffective the Substitute Information under which appellant subsequently went to trial. *Johnson*, 504 S.W.2d at 26.

Appellant's second point on appeal contends that the State thwarted his attempt to depose the rape victim. Appellant scheduled a deposition of the rape victim at the Circuit Attorney's office for the Friday afternoon before trial. Appellant's court reporter cancelled shortly before the deposition, notifying the Circuit Attorney's office. The Circuit Attorney's office failed to

---

1. All statutory references are to RSMo.1986 unless otherwise indicated.

relay this message immediately to appellant's attorney, thus precluding any chance to depose the victim before trial. Appellant was, however, permitted to interview the victim. On the day of trial, appellant filed motions to prohibit the victim's testimony, or alternatively, for a continuance, alleging improprieties by the State. The trial court denied both motions and appellant appeals claiming an abuse of discretion in refusing to grant the requested relief.

▮ A trial court's ruling on the admission or exclusion of evidence will not be reversed absent a clear abuse of discretion, *State v. Ferguson*, 727 S.W.2d 204, 207 (Mo.App.1987), and a trial court's denial of a continuance is reviewed pursuant to an identical standard. *State v. Brown*, 762 S.W.2d 471, 475 (Mo.App.1988). In the present case, appellant concedes that the State has violated no rule of discovery. The trial court, after denying appellant's motions, supported its decision by noting that the State complied with all notice requirements, the rape victim was ready to proceed with the deposition, and that appellant did, in fact, interview the victim prior to trial. In such circumstances, no abuse of discretion occurred in the trial court's denial of appellant's motions.

Appellant's third point contends that the trial court abused its discretion by improperly admitting into evidence a prior conviction for the purpose of enhancing his sentence. At trial, the State introduced a certified copy of a judgment of conviction. Appellant claims the court that rendered the prior conviction was without jurisdiction because appellant was a juvenile at the time of the offense and was never certified as an adult. Therefore, appellant contends, the judgment cannot support establishment of a prior conviction for enhancement purposes.

▮ The courts of this state have held that proof by a judgment, valid on its face, is admissible and sufficient for the purposes of enhancement:

> A certified copy of a prior conviction is presumed to be regular, and if it is in proper form and substance, it serves as a sufficient basis to support the establishment of a prior conviction.... By failing to take timely advantage of the remedies provided to set aside the judgment for invalidities not apparent on the face of it, the defendant has waived any such defects as a ground for objection to the admission of a certified copy of the judgment of a prior conviction.

*State v. Wilson*, 684 S.W.2d 544, 548 (Mo. App.1984) (quoting *State v. Middlemas*, 654 S.W.2d 355, 357 (Mo.App.1983)). Here, the State offered a certified copy of the transcript, sentence, and judgment from appellant's prior conviction. The judgment was valid on its face and therefore properly admitted to support the establishment of a prior conviction.[2]

In his fourth point, appellant contends that the trial court abused its discretion in denying his Motion to Defer Sentencing. Appellant claims that his pre-sentence investigation report improperly failed to include a recommendation on the possibility of probation. Appellant maintains that the trial court abused its discretion in sentencing appellant without a pre-sentence investigation report that made a recommendation on probation.

▮ The trial court has absolute, unfettered ability to grant or deny probation. *State v. Priesmeyer*, 719 S.W.2d 873, 876 (Mo.App.1986). Additionally, the use of a pre-sentence investigation report by a trial court in felony cases is discretionary. *Heistand v. State*, 740 S.W.2d 282, 284 (Mo. App.1987). Rule 29.07, which governs pre-sentence investigation reports, makes no reference to the requirement of a recommendation on probation. In view of the

2. The basis of appellant's complaint on this point seems to be the absence from the certified copy of the judgment of conviction of any mention of his status as a juvenile at the time of the offense. In addition to the certified copy of the judgment, the State introduced a certified copy of the transcript of the guilty plea and sentencing in which mention is made of the dismissal of proceedings in the juvenile court upon a finding that appellant was not a fit subject for treatment under the Juvenile Code and certification that he be tried by a court of general jurisdiction. No certified copy of this order of the juvenile court was introduced.

serious nature of appellant's crimes as well as his prior convictions and history of drug and alcohol abuse, we find no abuse of discretion by denying appellant's Motion to Defer Sentencing so that the trial judge may obtain a recommendation on probation.[3]

Appellant's fifth point claims that the trial court abused its discretion in excluding records pertaining to his admission to a drug rehabilitation center and a regional hospital. Appellant contends these records were relevant and material evidence tending to show appellant's mental condition at the time of the offense. The trial court allowed evidence showing appellant presented himself for treatment, but denied admission of the remaining records.

■■■■ The trial court is vested with broad discretion in ruling on questions of relevancy of evidence and, absent a clear showing of abuse of discretion, an appellate court will not interfere with the trial court's ruling. *State v. Brown*, 718 S.W.2d 493, 493–494 (Mo.banc 1986). Here, we find no such abuse of the trial court's discretion. Appellant was allowed to introduce evidence showing that he applied to and was accepted into a drug treatment program. Appellant's defense of drug induced psychosis was fully presented to the jury through the testimony of his medical expert. A rehabilitation center's rules and procedures have no probative value in proving appellant's defense of drug psychosis. Further, appellant's statements in the documents were self-serving, out of court hearsay, not part of the res gestae, and therefore, inadmissible. *State v. McIntyre*, 654 S.W.2d 188, 190 (Mo.App.1983).

■■■■ Appellant's final point on appeal contends that the trial court erred in refusing to strike a reference made by the State's medical expert concerning appellant's criminal past. Specifically, when asked about appellant's anti-social attributes, the State's expert replied:

> Well, as I indicated earlier, he had some of the childhood problems which were consistent with the diagnosis of an anti-social personality disorder. He reported frequently getting into fights; reported at times fighting with weapons; he reported running away from home on occasion, and engaging in some stealing; and some other symptoms, such as school work below expectation; and again that generally [he was] unable to get along with [his] peers.

Appellant claims that the reference to "stealing" constituted improper evidence of other crimes.

■■■■ The testimony of the State's medical expert responded to appellant's defense of mental defect. The testimony demonstrated that appellant's current offenses were not the result of a drug-induced state of delusion, but rather, were in character with a long established trait of criminal activity and violence. While the trial court prohibited references to appellant's "other crimes," the trial court permitted the State to rebut appellant's mental defect defense with any evidence considered by the medical experts showing prior, violent activity. Where the appellant has injected an issue in the case, the State is allowed to counteract that issue. *State v. Schmidt*, 748 S.W.2d 773, 776 (Mo.App.1988). Here, since appellant injected the issue of mental disease into the case, the State properly counteracted this defense with expert testimony regarding appellant's anti-social behavior. Even assuming, though, that the

---

**3.** Appellant concedes the matter of probation is purely discretionary as is the request for a presentence report. He argues that no informed discretion was exercised in this case because of a rule or policy of the 22nd Judicial Circuit prohibiting probation officers from including a probation recommendation in cases where a defendant has been convicted at a jury trial. The record fails to support this argument. Failure to request a probation recommendation does not establish a judicial failure to exercise discretion in the granting or denial of proba-

tion. Moreover, the record fails to support appellant's argument. His attorney concedes he has discovered no documentation of any rule or policy prohibiting the inclusion of a probation recommendation and bases his contention solely on hearsay. We do not disagree with his argument that a rule or policy which punishes an accused for exercising his right to a jury trial could run afoul of 5th, 6th and 14th Amendment guaranties. However, there simply is no substantive evidence in this case of the existence of such a rule or policy.

evidence constituted improper evidence of other crimes, error, which in a close case might call for reversal, may be disregarded as harmless when proof of guilt is strong. *State v. Harvey*, 766 S.W.2d 175, 177 (Mo. App.1989). A passing reference by a medical expert to appellant's boyhood thievery was harmless error in light of the substantial proof of appellant's guilt.

Judgment is affirmed.

DOWD, and STEPHAN, JJ., concur.