**STATE of Missouri, Respondent,**

v.

**O'Neil G. JOHNSON, Appellant.**

**No. WD 43062.**

Missouri Court of Appeals,
Western District.

March 12, 1991.

Tim L. Warren, St. Joseph, for appellant.

William L. Webster, Atty. Gen., Joan F. Gummels, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, LOWENSTEIN and BRECKENRIDGE, JJ.

LOWENSTEIN, Judge.

The issue presented in this case is whether the armed criminal action statute applies to aiders and abettors.

Appellant O'Neil G. Johnson and a group of friends were playing basketball in the gym of the Horace Mann Complex. Alberta Hayes heard gunfire between 7:00 and 8:00 p.m. She ran into the gym and told the basketball players that someone shot their cars. Alvin Williams' car had bullet holes in its front and back windows. Another car's back window was shattered by gunfire. Appellant Johnson assumed David Wilkinson shot the cars. He asked Hayes if she was related to Wilkinson. When she replied affirmatively, Johnson told her to tell her relative "he's going to die."

Appellant told Williams that he knew where the Wilkinsons could be found. Appellant left the gym in a car accompanied by two of the basketball players. Alvin Williams followed in his car accompanied by one other person. The young men made two stops. First, they drove to a location where they believed the Wilkinsons could be found. Johnson instructed the others to "shoot once and save your bullets." Robert Davis, who rode with the appellant, fired at least one shot at a parked car.

With appellant in the lead, the young men then drove to the Brittany Village Apartment Complex. David Wilkinson was sitting in front of an apartment watching his younger brother Jody, aged 13, play outside. Alvin Williams fired eight or nine shots at people standing in the area. Appellant got out of the car waving his hand gun. Others may also have fired their guns. A bullet struck Jody Wilkinson in the back of the head, but he survived. There was no evidence the appellant fired his gun. The bullet removed from Jody's

head did not match the type of gun appellant carried.

Johnson was convicted by a jury as an aider and abettor [1] of assault in the second degree, § 565.060, RSMo 1986, a class C felony, and armed criminal action, § 571.015, RSMo 1986 [2], a class A felony. He was sentenced to consecutive terms of seven years for the assault and twenty years for armed criminal action.

In his only point of error, Johnson alleges the trial court erred in submitting jury instruction number 7, which instructed the jury on the grounds upon which it could find Johnson guilty of armed criminal action. It read as follows:

### INSTRUCTION NO. 7

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that defendant Keith L. Johnson [3] committed the offense of assault in the second degree as submitted in Instruction No. 6, and

Second, that defendants Keith L. Johnson, Alvin Williams, Robert Davis, Daryl LeGon, Allen Stevenson, or DeWayne Alonzo Smith committed that offense by, with or through the use or assistance of a deadly weapon,

then you are instructed that the offense of armed criminal action has occurred, and if you further find and believe beyond a reasonable doubt:

Third, that with the purpose of promoting or furthering the commission of that armed criminal action, the defendant Keith L. Johnson acted together with or aided Alvin Williams, Robert Davis, Daryl LeGon, Allen Stevenson, or DeWayne Alonzo Smith in committing that offense,

then you will find the defendant Keith L. Johnson guilty under Count II of armed criminal action.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant Keith L. Johnson not guilty of that offense.

If you do find the defendant Keith L. Johnson guilty under Count II of armed criminal action, you will assess and declare the punishment at imprisonment for a term of years fixed by you but not less than three years.

Johnson essentially argues it was error to apply the armed criminal action statute to him because it does not apply to aiders or abettors. Only two Missouri cases help decide this issue: *State v. Clay*, 748 S.W.2d 44 (Mo.App.1988) and *State v. McGowan*, 789 S.W.2d 242 (Mo.App.1990).

In *Clay*, the defendant was convicted by a jury of forcible sodomy, felonious restraint, attempted robbery in the first degree, and armed criminal action. Defendant Clay argues on appeal that there was insufficient evidence to sustain his conviction. The facts showed that Clay and another man grabbed their victim about 10:00 or 11:00 p.m. while she walked past them. Clay's cohort held a knife to her throat and cupped his hand over her mouth while Clay told her to "come on." They dragged her from the street into a vacant lot, took off her blouse and told her to take off her shirt. Clay even suggested they take the victim with them. He also looked through her purse for money, but found none. Upon finding antibiotics in her purse, Clay said he would not touch the victim because he did not want to catch any diseases. Appellant's cohort, though, forced the vic-

---

1. Section 562.041, RSMo 1986 provides in pertinent part:

1. A person is criminally responsible for the conduct of another when ...

(2) Either before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

2. Section 571.015, provides in pertinent part:

"... [A]ny person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action ..."

3. The appellant was known as O'Neil G. Johnson, III, Kee Kee, Keith Lamont Johnson, and Kevin Lee.

tim to engage in fellatio. The victim knew that appellant stayed nearby because she heard him walking around. *State v. Clay*, 748 S.W.2d at 44–45.

The police arrived during the sodomy act. Both men fled. The police warned appellant to stop, but appellant responded, "Stay back or I'll shoot." One of the officers shot appellant in the legs then apprehended him. They found a knife underneath the appellant. *Id.*

Clay was convicted of forcible sodomy as an accomplice. *State v. Clay*, 748 S.W.2d at 45. He argued that his acts of grabbing the victim and remaining at the scene did not reach the level of complicity to support his conviction as an accomplice. He also argued that his statement that he would not touch the victim showed he lacked the requisite mental state. The *Clay* court rejected these arguments and found that Clay's conduct met the elements of § 561.024, RSMo 1986, set out, *supra*, footnote 1. The *Clay* court further found that the facts supported a finding that Clay had the requisite mental state for accomplice liability, as well as for the conviction on the other counts, *State v. Clay*, 748 S.W.2d at 46.

Johnson argues that *State v. Clay* is distinguishable because Clay was much more involved in the underlying felony than Johnson was here. This argument implies that appellant's conviction as an aider or abettor of second degree assault is not supported by the evidence. Appellant, however, does not challenge the sufficiency of the evidence on appeal. Therefore, the level of his involvement in the underlying felony is not an issue on appeal and the principles of accomplice liability need not be discussed.

In *McGowan, supra*, the defendant was convicted by a jury of one count of second degree assault, three counts of third degree assault, and one count of armed criminal action. Defendant McGowan argued on appeal that the state failed to make a submissible case and that he should be dismissed. *State v. McGowan*, 789 S.W.2d at 242.

The defendant McGowan was a member of a gang known as the Chouteau Boys. McGowan and other gang members decided they should confront a rival gang, of which Omar Wright was a member. McGowan and four other gang members left in a pick-up truck to find Wright and his gang. McGowan carried a revolver and his cohorts carried shotguns, another revolver and a semi-automatic rifle. *Id.*

When the McGowan group reached a location where Omar Wright's gang usually could be found, the young men in the truck fired shots, even though they did not see Wright. They later found Wright and fired into a populated area. Four bystanders, as well as a member of Wright's group, were struck by bullets and shotgun pellets. Although the state adduced no evidence at trial that McGowan fired his revolver or that any of the injuries resulted from bullets discharged by his weapon, the court found there was sufficient evidence to support his conviction of armed criminal action and assault. *State v. McGowan*, 789 S.W.2d at 243. The court specifically rejected McGowan's argument that the state was required to prove he participated in the shootings. *Id.*

Here, appellant argues that the armed criminal action statute does not apply to aiders and abettors because if the legislature had intended such an application, it would have worded the statute differently. Specifically, he suggests the legislature would have written the following: "any person who is found *guilty* of a felony ... is also guilty of the crime of armed criminal action." This court refuses to accept appellant's argument because if a jury finds a defendant "guilty" of a felony charge, then it has also implicitly found that the defendant committed a felony.

The appellant further argues that if the legislature had intended the armed criminal action statute to apply to aiders and abettors it would have phrased the statute "any person who aids any person who commits a felony ... is guilty of armed criminal action." This court refuses to accept appellant's argument for two reasons. First, following appellant's logic, for *any* crimi-

nal statute to apply to aiders and abettors a statute would have to read "any person who aids and abets any person who commits [the underlying crime] is guilty of [the underlying crime]." The state legislature has enacted § 562.041, RSMo 1986, *supra* note 1, to alleviate the necessity of such tedious statutory language. Section 562.041 plainly sets out when one is responsible for the conduct of another. Furthermore, subsection four of the armed criminal action statute provides: "The provision of this section shall not apply to the felonies defined in sections 564.590, 564.610, 564.620, 564.630, and 564.640 RSMo." [4] Section 571.015.4, RSMo 1986. If the legislature had intended the armed criminal action statute § 571.015, RSMo 1986, not to apply to the aiders and abettors statute § 562.041, RSMo 1986, then it would have made an explicit exception as it did for the firearms statutes.

Appellant's point on appeal is denied. The judgment of conviction is affirmed.

**4.** These statutes have been transferred to 571.105, 571.115, 571.120, 571.125 and 571.130, RSMo, respectively. All of these statutes concern possession of various firearms.