**STATE of Missouri, Plaintiff–Respondent,**

v.

**Christopher T. BOOYER, Defendant–Appellant.**

Nos. 24495, 24532.

Missouri Court of Appeals, Southern District, Division One.

Nov. 8, 2002.

Irene Karns, Assistant Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Richard A. Starnes, Assistant Attorney General, Jefferson City, for respondent.

PHILLIP R. GARRISON, Judge.

Following trial by the court without a jury, Christopher T. Booyer ("Appellant") was convicted of one count of first degree assault, in violation of Section 565.050 [1] and one count of armed criminal action, in violation of Section 571.015. He was sentenced to concurrent terms of ten years imprisonment for first degree assault and five years imprisonment for armed criminal action. He appeals, claiming the State failed to prove beyond a reasonable doubt that he had the requisite mental state to be guilty of either crime. We affirm.

Early in the morning of July 18, 1999, James Wisse ("Wisse") went for a walk in the downtown area of Springfield, Missouri, in a continuing effort to rehabilitate a work-related foot injury. As Wisse traveled west on Olive Street, he encountered a red convertible traveling east on the same street. Appellant was driving the car, with two passengers, Chris Hudson ("Hudson") and Roxanne Craft ("Craft"). As the car passed Wisse, Hudson yelled unknown, but apparently harassing, words in his direction. Wisse responded by continuing west until he crossed Campbell Street, after which he walked up dead end streets, across parking lots, and the wrong direction on one way streets in an effort to avoid further contact with Appellant and his companions.

1. References to statutes are to RSMo (2000) unless otherwise indicated.

Despite Wisse's efforts at evasion, Appellant, Hudson, and Craft caught up with him at the intersection of Walnut Street and Patton Avenue. Hudson got out of the car, and a brief skirmish ensued between he and Wisse, with Wisse apparently gaining the upper hand via a headlock of Hudson. At this point, Appellant and Craft both brandished weapons; Appellant a tire iron, and Craft a large crescent wrench. Craft got out of the car, but Wisse fled the scene.

Wisse's flight from the occupants of the red convertible was intercepted on South Avenue by the occupants of a white car, one of whom got out of that vehicle and approached Wisse while swinging a heavy chain. Wisse ran north to Park Central Square, hoping to make contact with a security guard he knew patrolled the area around a state office building. While attempting to make contact with the guard, Wisse saw Appellant drive by him again in the red convertible, still with Craft and Hudson. Wisse cut off his search for the guard and ran through a tunnel and north on Boonville Avenue.

When Wisse reached Water Street, the white vehicle pulled up behind him. A female occupant got out of the car and caught Wisse from behind, spinning him around. When Wisse hesitated at the prospect of hitting a female, he was struck from behind by an unknown assailant and knocked to the ground. As he fell, Wisse saw the red convertible just to his north; essentially, he was trapped between the two vehicles.

Thus began a vicious beating of Wisse by several assailants, with Appellant apparently observing from the convertible. Those assaulting Wisse used, at minimum, a crescent wrench, a heavy chain, and a tire iron. Wisse attempted to protect his head and neck by covering them with his arms and hands, resulting in the near amputation of his right index finger. Wisse lost consciousness for some period of time during the melee, and suffered additional injuries to his face, head, back, and arms in the form of deep lacerations and contusions, some of which were in a pattern matching that of the chain. Following reconstructive surgery, Wisse's right index finger remains deformed and virtually unusable. Wisse also continues to hear a ringing in his ears as a result of the beating.

Following the assault, Appellant drove Craft and Hudson away from the scene and to Craft's residence. No effort was made to summon assistance for Wisse. After disposing of the bloody weapons used in the beating, Appellant, Hudson, and Craft drove back to Park Central Square, where Wisse was being attended to by medical personnel and describing his attackers to police. Appellant and Hudson both were arrested at the scene when Wisse confirmed their identity to police as two of the people involved in the chase and subsequent assault. Craft was arrested soon thereafter, and police later recovered the bloody weapons from her home. In a statement made to police while in custody, Appellant admitted to driving the red convertible, both when he, Hudson, and Craft were searching for Wisse after the initial scuffle between Wisse and Hudson, and after the assault, when the attackers were making their escape.

In court-tried cases, "the trial court's findings have the force and effect of a jury verdict.... Consequently, we review this case as though a jury had returned a verdict of guilty." *State v. Falcone*, 918 S.W.2d 288, 289–90 (Mo.App. S.D.1996) (internal citations omitted). In cases where a defendant challenges the sufficiency of the evidence supporting his conviction, appellate review is limited to whether there is sufficient evidence from which a reason-

able trier of fact might have found the defendant guilty beyond a reasonable doubt. *State v. Hawthorne*, 74 S.W.3d 821, 822 (Mo.App. S.D.2002). All evidence favorable to the conviction is accepted as true, as well as reasonable inferences therefrom, while contrary evidence and inferences are disregarded. *Id.* "We do not weigh the evidence, but determine only whether there was sufficient evidence from which the trial court could have reasonably found [the defendant] guilty beyond a reasonable doubt." *Falcone* at 290 (internal citations omitted).

In Appellant's sole point on appeal, he claims the State failed to prove beyond a reasonable doubt that he possessed the required mental state to be guilty of first degree assault and armed criminal action in that there was insufficient proof he knew of Hudson's and Craft's intention to assault Wisse. We disagree.

Appellant was charged as an accomplice, in that he apparently did not himself deliver the blows to Wisse that constituted first degree assault or armed criminal action. Missouri has "eliminated the distinction between principals and accessories ... and it is now the law that all persons who act in concert are equally guilty." *State v. Barnum*, 14 S.W.3d 587, 591 (Mo. banc 2000). This law is bottomed upon two statutes. Section 562.036 provides that "[a] person with the required culpable mental state is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is criminally responsible, or both." Section 562.041(1)(2) states that "[a] person is criminally responsible for the conduct of another when ... [e]ither before or during the commission of an offense *with the purpose of promoting the commission of an offense,* he aids or agrees to aid or attempts to aid such other person in planning, committing or attempt-

ing to commit the offense." (emphasis added.) This statute "comprehends any of a potentially wide variety of actions intended by an individual to assist another in criminal conduct." *Barnum* at 591 (quoting *State v. Richardson*, 923 S.W.2d 301, 313 (Mo. banc 1996)).

Taken together, then, Sections 562.036 and 562.041 "require the State to prove that a defendant (1) purposefully promoted an offense, and (2) had the culpable mental state for the crime for which he is to be held liable" in order to prove a defendant guilty as an accomplice. *State v. Neal*, 14 S.W.3d 236, 239 (Mo.App. W.D. 2000) (citing *State v. Logan*, 645 S.W.2d 60, 64 (Mo.App. W.D.1982)). In most cases where a single crime is committed "if the accomplice has the purpose to promote the offense, he necessarily will have the required culpable mental state for that offense." *Logan* at 64. For this reason, "[if] it can be shown that the defendant had the 'purpose to promote an offense, he may be found to have the required culpable state of mind' as an aider and abettor." *Neal* at 239 (quoting *State v. Clay*, 748 S.W.2d 44, 46 (Mo.App. E.D.1988)).

There is ample evidence Appellant acted that morning with a "purpose to promote" the commission of first degree assault and armed criminal action. Where the "group activity is the use of weapons to wound ... supposed adversaries, one who joins the group and himself carries a weapon aids and encourages the gang enterprise and affirmatively advances the objective." *State v. Gordon*, 915 S.W.2d 393, 396 (Mo.App. W.D.1996) (quoting *State v. McGowan*, 789 S.W.2d 242, 243 (Mo.App. W.D.1990)). The court in *Gordon* went on to say that, "[in] such a situation, proof of [a] defendant's companionship and conduct before, during, and after the crime with others involved with the crime, in combina-

tion with presence at the scene and opportunity, can support [a] conviction." *Id.*

While mere presence at a crime scene, considered alone or in combination with a refusal to interfere, is insufficient to support a conviction, "[t]he broad concept of 'aiding and abetting' plainly encompasses acts that could be construed as 'encouragement' or its derivation." Mere encouragement is enough. Encouragement is the equivalent of conduct that "by any means countenances or approves the criminal action of another." "Countenances or approves" includes "encouraging or exciting [a criminal act] by words, gestures, looks, or signs." In fact, associating with those that [sic] committed the crime before, during, or after its occurrence, acting as part of a show of force in the commission of the crime, attempting flight from the crime scene, or failing to assist the victim or seek medical help are all factors which may be considered.

*Barnum* at 591 (internal citations omitted).

Several of the factors enumerated in *Barnum* appear in the record of this case. Appellant was in the car with Hudson and Craft when Hudson directed his harassing words at Wisse. He drove the car in an effort to find and intercept Wisse before and after the initial skirmish between Wisse and Hudson. During that first struggle, he brandished a tire iron. Still driving the car, he hunted Wisse down after that skirmish, and used the car to trap Wisse at the intersection of Boonville and Water, where the assault occurred. He fled the scene of the assault, along with Hudson and Craft, without making any effort to summon medical assistance for Wisse. These actions betray Appellant's encouragement of the assault of Wisse through his association with the perpetrators prior to and during the assault, his acting as a "show of force" in the commis-

sion of the crime, his active search for Wisse after Wisse attempted to elude Appellant and his associates, and his countenancing of the attack. In sum, there is sufficient evidence in the record to support a finding that Appellant acted "with the purpose of promoting" the crime of first degree assault. Section 562.041.

As we have noted, a defendant who is found to have acted with the purpose of promoting an offense may be found to have had the required culpable mental state to be guilty as an accomplice to the underlying offense. *Neal* at 239; *Clay* at 46. However, even if this were not the case, a finding that Appellant had the required culpable mental state would nevertheless be amply and independently supported by the evidence. "A person commits the crime of assault in the first degree if he ... *knowingly* causes ... serious physical injury to another person." Section 565.050 (emphasis added). A person acts " 'knowingly,' or with knowledge, ... [w]ith respect to a result of his conduct when he is aware that his conduct is practically certain to cause the result." Section 562.016(3)(2).

The record before us contains sufficient evidence for the trial court to have believed beyond a reasonable doubt that Appellant was aware "that his conduct [was] practically certain to cause" the assault of Wisse. "Direct evidence of a defendant's mental state is rarely obtainable, ... but it may be inferred from the defendant's conduct." *Neal* at 239. Appellant's active participation in the beating, or lack thereof, is inconsequential to determining he knew of the "practically certain" results of his own actions prior to the assault. The previously cited evidence showing Appellant encouraged Wisse's beating also supports a finding that he had the required culpable mental state for first degree assault. Moreover, one of the weap-

ons used, a tire iron, was first brandished by Appellant. Indeed, there is evidence in the record suggesting Appellant handed this weapon to Hudson for his use in the assault. Wisse was struck repeatedly about his head and torso with a tire iron, a large chain, and a crescent wrench. The intent to inflict "serious bodily injury" on a person can be inferred from the use of deadly weapons or dangerous instruments on the vital areas of a victim's body. *State v. Goodwin*, 43 S.W.3d 805, 816 (Mo. banc 2001). Far from being unaware of the practical certainty of Wisse's fate that evening, there is sufficient evidence for the trial court to have believed Appellant in fact actively encouraged that result. There can be little doubt he knew that his conduct was practically certain to result in the beating of Wisse.

Summarizing, the evidence was sufficient to support a finding beyond a reasonable doubt that Appellant acted with the purpose to promote the assault of Wisse. It is permissible for this alone to have led the trial court to find Appellant acted "knowingly," as is also required for a conviction of first degree assault. Even so, there was sufficient evidence presented to come to such a conclusion independent of a finding Appellant purposely promoted the offense. Appellant's point is denied.

Finally, we note that the record contains a form entitled "Judgment and Sentence to Division of Corrections on Plea of Guilty," signed by the trial judge, which erroneously indicates that Appellant pled guilty to the crimes of first degree assault and armed criminal action. We have noted that the record clearly reveals Appellant was found guilty following a bench trial, and that he did not, therefore, plead guilty. The failure to memorialize accurately the judgment of the trial judge as it was announced in open court, on a form appropriate to the circumstances, was clearly a clerical error. Rule 29.12 permits a trial court to correct such clerical errors in the judgment that obviously are a result of oversight or omission. *See, e.g. State v. Box*, 956 S.W.2d 460, 463 (Mo.App. S.D.1997). We remand this case, therefore, with instructions to the trial court to enter a judgment reflecting the judgment and sentence as it was announced by the trial judge in open court.

The judgment of the trial court is affirmed, and the case is remanded for proceedings consistent with this opinion.

MONTGOMERY, P.J., and BARNEY, J., concur.